IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>  v.<br><br>BIOANUE LABORATORIES, INC.,<br>a corporation, and<br>GLORIA D. RABER, an individual, and<br>KELLY RABER, an individual,<br><br>    Defendants. | CIVIL NO. _____ |

## COMPLAINT FOR PERMANENT INJUNCTION

Plaintiff, the United States of America, by its undersigned attorneys, respectfully represents to this Court as follows:

1.  This statutory injunction proceeding is brought under the Federal Food, Drug, and Cosmetic Act (the "Act"), 21 U.S.C. § 332(a), to enjoin and restrain Gloria D. Raber and Kelly Raber, individuals, and BioAnue Laboratories, Inc., a corporation, from violating:

  a.  21 U.S.C. § 331(d), by introducing or delivering, and/or causing to be introduced or delivered, into interstate commerce any new drug within the meaning of 21 U.S.C. § 321(p) that is neither approved under 21 U.S.C. § 355(a) or (j), nor exempt from approval pursuant to 21 U.S.C. § 355(i);

      b.      21 U.S.C. § 331(a), by introducing or delivering, and/or causing to be introduced or delivered, into interstate commerce any article of drug that is misbranded within the meaning of 21 U.S.C. § 352(f)(1);

      c.      21 U.S.C. § 331(k), by causing articles to become misbranded drugs within the meaning of 21 U.S.C. § 352(f)(1), in that their labeling fails to bear adequate directions for use, while such articles are held for sale after shipment of one or more or their components in interstate commerce;

      d.      21 U.S.C. § 331(a), by introducing or delivering, and/or causing to be introduced or delivered, into interstate commerce articles of food (dietary supplements, as defined at 21 U.S.C. § 321(ff)) that are adulterated within the meaning of 21 U.S.C. § 342(g)(1); and

      e.      21 U.S.C. § 331(k), by causing articles of food (dietary supplements, as defined at 21 U.S.C. § 321(ff)) to become adulterated within the meaning of 21 U.S.C. § 342(g)(1), while such articles are held for sale after shipment of one or more of their components in interstate commerce.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction under 21 U.S.C. § 332(a) and 28 U.S.C. §§ 1331 and 1345.

3.      Venue in this District is proper under 28 U.S.C. § 1391(b) & (c).

## DEFENDANTS

4.      Defendant BioAnue Laboratories Inc. ("BioAnue") is a privately-held Georgia corporation, incorporated in 2009. The firm has four full-time employees, and operates from its headquarters located at 123 Wood Tech Drive, Rochelle, Georgia.

BioAnue sells products under its own brand names, which include BioAnue and TumoRx.

5.     Defendant Gloria Raber is BioAnue's Chief Executive Officer and is responsible for all operations for the firm.

6.     Defendant Kelly Raber is Defendant Gloria Raber's husband.  Defendant Kelly Raber is the administrator of many of BioAnue's websites, several of which contain his photograph and telephone number.

7.     Defendants Gloria Raber and BioAnue lease all of their finished product formulas from Free Speech Trust, an entity owned by Defendants Gloria Raber and Kelly Raber.  Free Speech Trust owns the trademarks for the name BioAnue and four other trademarked names associated with BioAnue: Mender, Tumorx, Dailyzyme, and Med-Anue.

8.     Defendants manufacture, promote, and distribute many products, including TumoRx Cardio Clean, TumoRx Apoptosis Full Strength, TumoRx Formula Cx, BioAnue Diabetic Mender, BioAnue Heart Mender, and Bovine Cartilage.

9.     Defendants operate six websites:  www.bioanuelabs.com, www.vmhe.com, www.tumorx.org, www.tumorx.com, www.cancerx.org, www.hopewelltechnoligieslimited.com.  Defendants are solely responsible for the content of these websites.

10.     Defendants sell their products to customers through the www.vmhe.com website and telephone orders.  Defendants' other websites provide information about Defendants' products and a link to www.vmhe.com, where products can be purchased.

11. Defendants' products are available for shipment throughout the country. FDA has completed undercover purchases of Defendants' products, documenting the shipment of such products from Georgia to Maryland. Additionally, Defendants receive component ingredients for their drugs and dietary supplements from outside Georgia.

## UNAPPROVED DRUGS

12. The introduction or delivery for introduction into interstate commerce of an unapproved new drug violates the Act. 21 U.S.C. § 331(d).

13. Under the Act, a product is a drug if it is "intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease." 21 U.S.C. § 321(g)(1)(B). Moreover, products (other than food) "intended to affect the structure or any function" of the human body are drugs within the meaning of 21 U.S.C. § 321(g)(1)(C).

14. The intended use of a product may be determined from any relevant source, including labeling. 21 C.F.R. § 201.128.

15. The Act defines labeling as "all labels and other written, printed, or graphic matter (1) upon any article or any of its containers or wrappers, or (2) accompanying such article." 21 U.S.C. § 321(m). The Supreme Court has held that the term "accompanying" in the second clause of 21 U.S.C. § 321(m) is not restricted to labels that are on or in the article at issue and that physical attachment to the article is not necessary. See Kordel v. United States, 335 U.S. 345, 349-50 (1948). Promotional literature constitutes labeling because it is part of an integrated distribution program. Id. at 350.

16. Defendants promote their products for use as drugs on the websites www.tumorx.org, www.tumorx.com, www.hopewelltechnologieslimited.com, and www.cancerx.org. These websites, which only promote products manufactured by

4

BioAnue, are part of an integrated distribution scheme for Defendants' products because they each contain a link to www.vmhe.com from which customers can purchase Defendants' products. Defendants also promote their products through brochures, which are available upon request.

      17.     Defendants' websites and product brochures make many drug claims about each product demonstrating that the products are to be used in the diagnosis, cure, mitigation, treatment, or prevention of numerous diseases, including cancer, heart disease, diabetes, and HIV/AIDS, and/or affect the structure or function of the body. For example, Defendants make the following claims:

      a.     TumoRx Cardio Clean:  "[W]ill go into the bloodstream and clean out your arteries and eliminate high cholesterol . . . .";

      b.     TumoRx Apoptosis Full Strength: The more [TumoRx Apoptis Full Strength] a person consumes, the more effective its [sic] at ridding he [sic] ridding of cancer.";

      c.     TumoRx Formula Cx:  "Metabolic acidosis can be reversed using TumoRx CX protocol.";

      d.     BioAnue Diabetic Mender:  "Diabetic Mender can start to control diabetes for most people within the first 2 capsules of the product. . . [Diabetic Mender] will in most people control, reverse and repair diabetes.";

      e.     BioAnue Heart Mender: "BioAnue Heart Mender repairs the structure and function of cells, allowing the body to rebuild and repair the cardiovascular system.";

5

  f.  Bovine Cartilage: "Here's a list of cancers that have been tested and shown a positive response to Bovine Cartilage: Brain… Breast… Ovarian… Lung… Pancreatic… Kidney";

  18.  Based on these claims, and many others found on Defendants' websites and brochures, these products and others promoted and distributed by Defendants are drugs under the Act.

  19.  Under the Act, a "new drug" may not be introduced or delivered for introduction into interstate commerce unless FDA has approved a new drug application ("NDA") or abbreviated new drug application ("ANDA") with respect to such drug, or such drug is exempt from approval under an investigational new drug application ("IND").  21 U.S.C. §§ 355(a), (b), (i), and (j).

  20.  A "new drug" is defined as any drug "the composition of which is such that the drug is not generally recognized, among experts qualified by scientific training and experience to evaluate the safety and effectiveness of drugs, as safe and effective for use under the conditions prescribed, recommended, or suggested in the labeling thereof."  21 U.S.C. § 321(p)(1).  For a product to be deemed "generally recognized as safe and effective" ("GRAS/GRAE"), it must have substantial evidence of safety and effectiveness.  21 U.S.C. § 355(d).  If it is an over-the-counter ("OTC") drug, the product must comply with a monograph established pursuant to an FDA regulation.  21 C.F.R. § 330.1.

  21.  Defendants' drugs are "new drugs" as defined by 21 U.S.C. § 321(p)(1), because they are not generally recognized, among experts qualified by scientific training and experience to evaluate the safety and effectiveness of drugs, as safe and

effective for use under the conditions prescribed, recommended, or suggested in their labeling, and do not conform to any monographs.

22.     FDA has searched its records for NDA, ANDA, and IND submissions by Defendants.  Defendants have no such approvals on file from FDA.  Moreover, Defendants' drugs do not conform to the OTC monograph set forth in 21 C.F.R. § 330.1, or any other OTC drug monograph.  As a result, Defendants' drugs may not be distributed legally in interstate commerce.

23.     Defendants violate 21 U.S.C. § 331(d) by introducing or delivering for introduction into interstate commerce unapproved new drugs.

## MISBRANDED DRUGS

24.     The introduction or delivery for introduction into interstate commerce of any drug that is misbranded violates the Act.  21 U.S.C. § 331(a).

25.     Causing articles to become misbranded drugs within the meaning of 21 U.S.C. § 352(f)(1), in that their labeling fails to bear adequate directions for use, while such articles are held for sale after shipment of one or more of their components in interstate commerce violates the Act.  21 U.S.C. § 331(k).

26.     A drug is misbranded under 21 U.S.C. § 352(f)(1) if its label fails to bear "adequate directions for use" as defined by 21 C.F.R. § 201.5(a), and it does not fall within a regulatory exemption from that requirement, 21 C.F.R. §§ 201.100(c)(2), 201.115.

27.     "Adequate directions for use" means "directions under which the layman can use a drug safely and for the purposes for which it is intended."  21 C.F.R. § 201.5(a)

28. Defendants' drug products are misbranded under 21 U.S.C. § 352(f)(1) because they lack adequate directions for use and they are not exempt from that requirement. 21 C.F.R. §§ 201.100(c)(2), 201.115.

29. Because they are unapproved new drugs, as described above, Defendants' drugs are not exempt from the requirement for adequate directions for use. 21 C.F.R. §§ 201.100(c)(2), 201.115.

30. Defendants violate 21 U.S.C. § 331(a) by introducing or delivering for introduction into interstate commerce misbranded drugs.

31. Defendants violate 21 U.S.C. § 331(k) by causing articles to become misbranded drugs within the meaning of 21 U.S.C. § 352(f)(1), in that their labeling fails to bear adequate directions for use, while such articles are held for sale after shipment of one or more of their components in interstate commerce.

## ADULTERATED DIETARY SUPPLEMENTS

32. The introduction or delivery for introduction into interstate commerce of any food (here, dietary supplements), that are adulterated within the meaning of 21 U.S.C. § 342(g)(1), violates the Act. 21 U.S.C. § 331(a).

33. Causing food (dietary supplements) to become adulterated within the meaning of 21 U.S.C. § 342(g)(1) while such products are held for sale after shipment of one or more of their components in interstate commerce violates the Act. 21 U.S.C. § 331(k).

34. The Act defines "dietary supplement" as "a product (other than tobacco) intended to supplement the diet that bears or contains one or more of the following dietary ingredients: a vitamin; a mineral; an herb or other botanical; an amino acid; a dietary substance for use by man to supplement the diet by increasing the total dietary

8

intake; or a concentrate, metabolite, constituent, extract or combination of [any of them]." 21 U.S.C. § 321(ff). In addition, a dietary supplement must be "labeled as a dietary supplement." Id. Dietary supplements are deemed to be "food" under the Act, except for purposes of 21 U.S.C. §§ 321(g) and 350f. Id.

35. Defendants' products are labeled as dietary supplements on their principal display panels, as defined in 21 C.F.R. § 101.1. Furthermore, each of Defendants' products labeled as a dietary supplement contain at least one of the dietary ingredients specified in 21 U.S.C. § 321(ff).

36. In defining "dietary supplement," the Act expressly provides that a product that is a dietary supplement may also be a drug if it meets the definition of a "drug" under 21 U.S.C. § 321(g). 21 U.S.C. § 321(ff).

37. The Act requires dietary supplements manufacturers to operate in compliance with current good manufacturing practice for dietary supplements ("Dietary Supplement cGMP"). 21 U.S.C. § 342(g)(1). Dietary supplements not manufactured, prepared, packed, or held in conformance with Dietary Supplement cGMP are deemed to be adulterated. 21 U.S.C. § 342(g)(1). The Dietary Supplement cGMP regulations are set forth at 21 C.F.R. Part 111.

38. FDA investigators inspected Defendants' facility on August 14-24, 2012 (the "August 2012 inspection"). The inspection revealed significant deviations from Dietary Supplement cGMP, including, but not limited to, the following:

    a. Failure to implement a system of production and in-process controls that cover all stages of manufacturing to ensure the quality of the dietary supplement and to

ensure that the dietary supplement is packaged and labeled as specified in the master manufacturing record, as required by 21 C.F.R. § 111.60.

  b. Failure to prepare a written master manufacturing record for each unique dietary supplement formulation, as required by 21 C.F.R. § 111.205.  This practice is insufficient to ensure quality and batch-to-batch uniformity of the dietary supplements;

  c. Failure to implement quality control operations in the manufacturing of dietary supplements in a way that ensures the quality of the dietary supplement and that ensures the dietary supplement is packaged and labeled as specified in the MMR, as required by 21 C.F.R. § 111.65;

  d. Failure to establish specifications for any point, step, or stage in the manufacturing process where control is necessary to ensure the quality of the dietary supplement and to ensure that the dietary supplement is packaged and labeled as specified in the MMR, as required by 21 C.F.R. § 111.70(a), (b), (c), (d), (e), and (g);

  e. Failure to prepare a batch production record for each batch of dietary supplement manufactured, as required by 21 C.F.R. § 111.255;

  f. Failure to establish and follow written procedures that specify responsibilities for quality control, as required by 21 C.F.R. § 111.103.  During the inspection, FDA investigators observed a total failure of quality control operations to review all monitoring required by the MMR, batch production records, and manufacturing operations;

  g. Failure to prepare a written MMR for each unique formulation of dietary supplement manufactured, as required by 21 C.F.R. § 111.205;

  h.  Failure to conduct at least one appropriate test or examination to verify the identity of any component that is a dietary ingredient, as required by 21 C.F.R. § 111.75(a)(1)(i); and

  i.  Failure of quality control personnel to withhold from release for distribution any batch of dietary supplement that does not meet all product specifications as required by 21 C.F.R. § 111.123(a), in accordance with 21 C.F.R. § 111.70(e).

  39.  As a result of the cGMP violations, the dietary supplements manufactured by Defendants are adulterated within the meaning of 21 U.S.C. § 342(g)(1).

  40.  Defendants violate 21 U.S.C. § 331(a) by introducing or delivering for introduction into interstate commerce articles of food (dietary supplements) that are adulterated within the meaning of 21 U.S.C. § 342(g)(1).

  41.  Defendants violate 21 U.S.C. § 331(k) by causing articles of food (dietary supplements) to become adulterated within the meaning of 21 U.S.C. § 342(g)(1) while such articles are held for sale after shipment of one or more of their components in interstate commerce.

## HISTORY

  42.  Defendants are well aware that their conduct violates the law and that continued violations could lead to regulatory action.

  43.  In February 2012 FDA reviewed Defendants' websites and issued to Defendant Gloria Raber and BioAnue a Warning Letter dated February 9, 2012, that informed Defendant Gloria Raber that she and BioAnue were marketing unapproved new drugs and introducing into interstate commerce misbranded drugs, in violation of the Act.  See 21 U.S.C. § 331(a) and (d).  The Warning Letter identified six products manufactured, marketed, and distributed by Defendant Gloria Raber and BioAnue that,

based on their labeling, are unapproved new drugs under the Act. The Warning Letter specifically outlined the claims observed in Defendants' online promotional materials. It also explained that none of the listed products are generally recognized as safe and effective for the indications listed on their labeling, nor are they the subject of approved NDAs, ANDAs, or INDs. The Warning Letter warned Defendant Gloria Raber and BioAnue that the violations contained in the Warning Letter were not meant to be an all-inclusive list of deficiencies, and reminded them that it was their responsibility to ensure that all of their products are in compliance with the laws and regulations enforced by FDA.

44. On March 5, 2012, FDA received a response to its Warning Letter from counsel representing Defendant Gloria Raber and BioAnue. The letter disclaimed having any control over the websites identified in the Warning Letter, where claims about Defendants' products are made, and denied any wrongdoing.

45. At the close of the August 2012 inspection, FDA investigators met with Defendant Gloria Raber and presented her with a List of Inspectional Observations ("FDA Form 483"). At that time, the FDA investigators also informed Defendant Gloria Raber that Defendants violate the Dietary Supplement cGMP regulations.

46. Defendants' history of promoting products to cure, mitigate, treat, prevent, and/or reduce the risk of diseases including, but not limited to, cancer, diabetes, HIV/Aids, and heart disease and/or affect the structure or function of the body demonstrates their unwillingness to comply with the Act. Based on Defendants' conduct, as described above, it is evident that, unless restrained by order of this Court, Defendants will continue to violate the Act, 21 U.S.C. §§ 331(a), (k), and (d).

WHEREFORE, Plaintiff respectfully requests that the Court:

I. Permanently restrain and enjoin, under 21 U.S.C. § 332(a), Defendants, and each and all of their directors, officers, agents, representatives, employees, attorneys, successors, assigns, and any and all persons in active concert or participation with any of them, from doing or causing to be done, any of the following acts:

   A. Violating 21 U.S.C. § 331(d), by distributing unapproved new drugs in interstate commerce;

   B. Violating 21 U.S.C. § 331(a), by distributing misbranded drugs in interstate commerce;

   C. Violating 21 U.S.C. § 331(k), by causing drugs that Defendants hold for sale after shipment in interstate commerce to become misbranded;

   D. Violating 21 U.S.C. § 331(a), by distributing adulterated dietary supplements in interstate commerce; and

   E. Violating 21 U.S.C. § 331(k), by causing dietary supplements that Defendants hold for sale after shipment interstate commerce to become adulterated;

II. Permanently restrain and enjoin, under 21 U.S.C. § 332(a), Defendants, and each and all of their directors, officers, agents, representatives, employees, attorneys, successors, assigns, and any and all persons in active concert or participation with any of them, from promoting and distributing any drug or dietary supplement unless and until:

   A. An approved new drug application or abbreviated new drug application pursuant to 21 U.S.C. § 355(a) or (j) is in effect for the product; or

   B. An investigational new drug exemption filed pursuant to 21 U.S.C. § 355(i) is in effect for the product; or

   C. Defendants have removed all claims from their product labels, labeling, promotional materials, websites owned or controlled by or related to Defendants, and in any other media that cause that product to be a drug as defined by the Act;

  III. Permanently restrain and enjoin, under 21 U.S.C. § 332(a), Defendants, and each and all of their directors, officers, agents, representatives, employees, attorneys, successors, and assigns, and any and all persons in active concert or participation with any of them, from manufacturing, processing, packing, labeling, holding, and/or distributing dietary supplements, unless and until Defendants' methods, facilities, and controls used to manufacture, process, pack, label, and hold dietary supplements are established, operated, and administered in conformity with Dietary Supplement cGMP and the Act, in a manner that has been found acceptable by FDA;

  IV. Order that FDA be authorized pursuant to this injunction to inspect Defendants' place(s) of business and all records relating to the receipt, manufacture, processing, packing, labeling, holding, and distribution of any drug or dietary supplement to ensure continuing compliance with the terms of the injunction, the costs of such inspections to be borne by Defendants at the rates prevailing at the time the inspections are accomplished; and

That Plaintiff be granted judgment for its costs herein, and that this Court grants such other and further relief as it deems just and proper.

This the 29th day of May, 2013.

                    Michael J. Moore
                    United States Attorney


BY:
                    /s/ William D. Gifford_____
                    WILLIAM D. GIFFORD
                    Assistant U.S. Attorney
                    300 Mulberry Street, Suite 400
                    Macon, GA 31201
                    Phone:  (478) 621-2729
                    Fax:     (478) 621-2737
                    Bill.Gifford@usdoj.gov




                    /s/ Gerald C. Kell_____
                    GERALD C. KELL
                    Signature by WDG With Express Permission
                    Senior Trial Counsel
                    Consumer Protection Branch
                    Civil Division
                    U.S. Department of Justice
                    P.O. Box 386
                    Washington, DC  20044
                    Phone:  (202) 514-1586
                    gerald.kell@usdoj.gov

OF COUNSEL:

WILLIAM B. SCHULTZ
Acting General Counsel

ELIZABETH H. DICKINSON
Chief Counsel
Food and Drug Division

ANNAMARIE KEMPIC
Deputy Chief Counsel
Litigation

JILLIAN WEIN RILEY
Assistant Chief Counsel for Enforcement
United States Department of Health and Human Services
Office of the General Counsel
10903 New Hampshire Ave.
Silver Spring, MD  20993-0002
(301) 796-2918