IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 5:13-CV-188 (MTT) |
| ) | |
| BIOANUE LABORATORIES, INC., ) | |
| GLORIA D. RABER, and KELLY ) | |
| RABER, ) | |
| ) | |
| Defendants. ) | |

## ORDER

Defendants Gloria Raber and Kelly Raber have moved for relief from the Court's order permanently enjoining the Defendants.[1] Docs. 32; 42. The Defendants have also filed various motions related to their request for relief from the injunction. *See* Docs. 36 (request to be "disjoined" from the injunction); 37 (request for production of the telephone transcript); 41 (motion to strike the Government's responses). For the following reasons, the motions are **DENIED**.

## I. BACKGROUND

On May 29, 2013, the Government filed a complaint for injunctive relief against the Defendants, alleging that the Defendants violated various provisions of the Federal Food, Drug, and Cosmetic Act ("the Act") by misbranding and adulterating unapproved

---

[1] The Rabers claim that BioAnue Laboratories, Inc. is defunct. Doc. 32 at 4. As used in this Order, "Defendants" refers only to the Rabers.

new drugs and dietary supplements while selling them in interstate commerce. Doc. 1 ¶ 1(a)-(e) (citing 21 U.S.C. § 331(a), (d), (k)).

On July 23, 2014, the Court granted the Government's motion for summary judgment. Doc. 26. In that Order, the Court concluded that (1) the Defendants violated the Act because their products are "new drugs" that have not been approved by the Food and Drug Administration ("FDA") and are not generally recognized as safe and effective; (2) even if the products were dietary supplements rather than drugs, the Defendants "still have violated the law by not adhering to FDA regulations in their manufacturing process and causing their food products to become 'adulterated;'" and (3) Defendant Kelly Raber acted in concert with BioAnue Laboratories, Inc. and Gloria Raber when formulating BioAnue products. *Id.* at 12, 15.

The Court also entered an order permanently enjoining the Defendants from selling any drug or dietary supplement unless and until certain requirements were met. Doc. 27 ¶ 8. These requirements are listed in Paragraph 8 of the injunction. *Id.* ¶ 8(A)-(J). Notably, the injunction states:

> Unless otherwise ordered, all decisions specified in this Order shall be vested in the discretion of FDA and shall be final. If contested, FDA's decisions under this Order shall be reviewed by the Court under the arbitrary and capricious standard set forth in 5 U.S.C. § 706(2)(A). Review shall be based exclusively on the written record before FDA at the time the decision was made. No discovery shall be taken by either party.

*Id.* ¶ 23. The injunction also states that the Court would convene a hearing with the parties to "discuss the disposition of the drugs and dietary supplements." *Id.* ¶ 10. That hearing was held on August 1, 2014, at which the Court advised the parties that the inventory of the products "will remain secured and will not be relabeled." Doc. 29. To the Court's knowledge, the Defendants' products remain in the Defendants' possession.

Again, the Defendants allege BioAnue is defunct. Doc. 32 at 4. However, the Defendants have placed in the record a letter from the FDA, which states that BioAnue's website, www.bioanuelabs.com, "redirects visitors to the website for BioAnue Health Products (www.bioanuehealth.com), a company that has been in business '[s]ince January 2016.'" Doc. 42-3 at 2. In its brief, the Government makes a similar allegation—that BioAnue's website is now www.bioanuehealth.com—which the Defendants do not dispute. Doc. 35 at 3, 6.

On May 15, 2017, the Defendants filed a "Petition for Relief from Injunction." Doc. 32. In that petition, they argue that they complied with the requirements, at least those they claim are possible to satisfy, set forth in the injunction. *See generally id.* On August 9, 2017, after the Government responded to their initial petition, the Defendants filed a "Second Request for Relief from Order of Permanent Injunction." Doc. 42. Therein, they argue that Federal Rule of Civil Procedure 60 provides a basis for granting them relief from the injunction. *Id.* at 3.

## II. DISCUSSION

### A. Defendants' Motions for Relief from Permanent Injunction

#### 1. Standards of Review

The order enjoining the Defendants provides that all decisions specified in the injunction are vested in the FDA's discretion and that these decisions, if contested, are subject to an arbitrary and capricious standard of review under 5 U.S.C. § 706(2)(A). Doc. 27 ¶ 23. This statutory standard of review is appropriate because, to secure relief from the injunction, the Defendants must show that the FDA improperly rejected their efforts to seek relief through administrative channels. In other words, the standard of

review provided in the injunction is the same standard of review that courts apply in this type of challenge to the FDA's action. *See, e.g.*, *United States v. Livdahl*, 356 F.Supp.2d 1289, 1295-96 (S.D. Fla. 2005) (noting that the FDA's determination of whether the defendants are in compliance with the order enjoining them from selling drugs is reviewed under an arbitrary and capricious standard).

Under the arbitrary and capricious standard, which is highly deferential to the agency decisionmakers, the Court's role "is limited to determining whether [the FDA's decision] was made rationally and in good faith—not whether it was right." *Anderson v. Ciba-Geigy Corp.*, 759 F.2d 1518, 1522 (11th Cir. 1985) (quotation marks and citations omitted). If a rational basis exists for the agency decision, "it must be upheld as not being arbitrary or capricious, even if there is evidence that would support a contrary decision." *Jett v. Blue Cross and Blue Shield of Alabama, Inc.*, 890 F.2d 1137, 1140 (11th Cir. 1989). Thus, as the moving party, the Defendants must show not merely that the record contains evidence to support their position but that the record is devoid of reasonable evidence that would support the FDA's decision to deny the expert reports. *See Tackitt v. Prudential Ins. Co. of America*, 758 F.2d 1572, 1575 (11th Cir. 1985) (noting there was a rational connection between the evidence presented and the agency's decision).

The parties assume that the standard of review is determined by Federal Rule of Civil Procedure, specifically Rule 60(b)(5), which governs relief from an injunction.[2] Docs. 35 at 4; 42 at 3; *see Griffin v. Secretary, Florida Dept. of Corrections*, 787 F.3d 1086, 1089 (11th Cir. 2015) ("The Supreme Court has made it clear that Rule 60(b)(5)

---

[2] In fact, the parties do not discuss the arbitrary and capricious standard of review in their briefs. Both the arbitrary and capricious standard and the standard pursuant to Rule 60 apply in this case.

applies in ordinary civil litigation where there is a judgment granting continuing prospective relief, such as an injunction. . . ."). Rule 60(b)(5) provides, in pertinent part, that a party may obtain relief from an injunction when "it is no longer equitable that the judgment should have prospective application, not when it is no longer convenient to live with the terms of a consent decree." *Rufo v. Inmates of Suffolk Cnty. Jail*, 502 U.S. 367, 383 (1992) (quotation marks omitted) (citing Rule 60(b)(5)). Accordingly, to modify a court order, the movant has the initial burden to show by conclusive evidence[3] a "significant change in circumstances"—either in factual conditions or in law. *Id.* at 383-84; *see AIG Baker Sterling Heights, LLC v. American Multi-Cinema, Inc.*, 579 F.3d 1268, 1273 (11th Cir. 2009) (noting that to receive relief under Rule 60(b)(5) the movants must produce conclusive evidence that they partially satisfied the judgment). If this showing is made, then the Court must determine whether the proposed modification "is suitably tailored to the changed circumstance." *Rufo*, 502 U.S. at 383.

Here, the parties dispute only over whether the first requirement—significant change in circumstances—has been met.[4] The Supreme Court observed that a significant change in circumstances can arise in any of at least three situations: (1) "changed factual conditions make compliance with the decree substantially more onerous" than was contemplated; (2) the decree "proves to be unworkable because of unforeseen obstacles," or (3) "enforcement of the decree without modification would be

---

[3] At least one commentator has presumed this showing must be made by clear and convincing evidence. *See* Roger S. Haydock & Jeffrey W. Stempel, *Fundamentals of Litigation Practice* § 31:2.7 (2017) (noting a party attacking an injunction must demonstrate by a strong showing, "presumably by clear and convincing evidence," that the changed circumstances justify relief).

[4] The Defendants only argue that there has been a significant change in factual conditions, not in law.

detrimental to the public interest." *Johnson v. Florida*, 348 F.3d 1334, 1342 (11th Cir. 2003) (quoting *Rufo*, 502 U.S. at 384-85).

Whatever standard is applied, the Defendants are not entitled to the relief they seek—they have not established that the FDA's actions are arbitrary and capricious and they have not shown by conclusive evidence a significant change in circumstances.

### 2. Petition for Relief from Injunction

In their initial petition for relief, the Defendants argue they have complied with the injunction, summarizing each provision of the injunction and providing underneath their responses. Doc. 32 at 2-7. For example, they claim that they removed all labels from their products and all information about their products from all websites and media within their control. *Id.* at 3. To establish that they have complied with the injunction, the Defendants allege that they hired an independent expert[5] to inspect BioAnue's product labels, paperwork, facility, and manufacturing processes but the FDA arbitrarily "denied and refused to accept his reports." *Id.* However, the Defendants have only put one of the expert reports, the report of a Dietary Supplement Expert, in the record to support their allegation that the FDA arbitrarily denied that report. Doc. 38-9. To prove their allegations regarding the other report, the report of a Labeling Expert, the Defendants rely on a December 19, 2014 letter from the FDA, in which the FDA explained at length why the FDA was denying both expert reports.[6] *See generally* Doc. 30-1. Based on this record, it is clear the FDA had a rational basis for denying the

---

[5] The Defendants retained the same person, Mr. Fucetola, to be their Labeling Expert and Dietary Supplement cGMP Expert. Doc. 30-1 at 3.

[6] The Defendants did not attach this document to their "Petition for Relief from Injunction" but rather attached it to their letter filed with the Court on December 20, 2016, in which they requested the Court to "intervene between the FDA and [them]." Doc. 30 at 1.

Defendants' expert reports, and the Defendants have not established by conclusive evidence that a significant change in circumstances has occurred.

In the FDA's response to the Defendants' expert reports, the FDA states the Labeling Expert's "Preliminary Review" of the Defendants' product labels and his "Certification of Retained Expert Pursuant to Order for Permanent injunction of July 23, 2014" ("Expert Certification") fail to comply with the requirements under Paragraph 8(C) and 8(D) of the injunction. Doc. 30-1 at 2-3. Paragraph 8(C) states that the Labeling Expert must perform a comprehensive inspection of all the Defendants' product labels, labeling, promotional materials, and any Internet websites owned or controlled by or related to the Defendants. Doc. 27 ¶ 8(C). Paragraph 8(D)(iii) states that the expert's certification must provide "a full and complete detailed report of the results" of the inspection. Doc. 27 ¶ 8(D)(iii).

The FDA determined that the Labeling Expert's "Preliminary Review" was just that, an initial assessment of the Defendants' product labels. Doc. 30-1 at 3. The Preliminary Review simply noted that the "labels need some work," that the product names may need to be "changed to a more neutral name," and that the "product names, at first look, present some problems, as health conditions are named." *Id.* Further, the "Expert Certification provided, without further detail, that [the expert] reviewed 'the labels, web sites, and literature' and cross references the Preliminary Review." *Id.* (quoting the Expert Certification). The FDA determined that the Preliminary Review was insufficient to constitute "a full and complete detailed report." Based on the record, this is a reasonable determination.

The Defendants have also failed to establish compliance with Paragraph 8(D)(i)-(ii) of the injunction. *Id.* Paragraph 8(D)(i)-(ii) require the Labeling Expert to certify in writing to the FDA that he has conducted the inspection described in Paragraph 8(C) and to certify that the Defendants have removed all claims from each of their product labels, labeling, promotional materials, and websites that cause any of the Defendants' products to be drugs. Doc. 27 ¶ 8(D)(i), (ii). The Defendants' expert neither certified in writing that he conducted the inspection nor certified that the Defendants have removed all claims from their product labels. Doc. 30-1 at 3. Accordingly, the Court finds reasonable the FDA's decision to reject the alleged conclusions of the Defendants' Labeling Expert.

The Court also finds reasonable the FDA's decision to reject the conclusions of the Defendants' Dietary Supplement cGMP Expert. The FDA concluded that the expert's inspection of the facility and his report and certification failed to comply with Paragraph 8(F) and 8(G) of the injunction. Doc. 30-1 at 4. Paragraph 8(F) requires the Dietary Supplement cGMP Expert to perform a comprehensive inspection of the Defendants' "facility and the methods, processes, and controls that [the] Defendants used to manufacture, prepare, pack, label, hold, and distribute dietary supplements and the labeling for all of [the] Defendants' dietary supplements. . . ." Doc. 27 ¶ 8(F). Paragraph 8(G) states that the Dietary Supplement Expert must certify in writing to the FDA that the inspection was conducted and provide, as part of the certification, "a full and complete detailed report of the results" of the inspection. *Id.* ¶ 8(G).

Regarding the required comprehensive inspection, the Dietary Supplement Expert conducted a "recorded visual inspection of the BioAnue facility via Skype." Doc.

30-1 at 3.  The expert provided an internet address that allegedly linked to his Skype audit, but the FDA was "not able to access the content."  Doc. 30-1 at 3.  Moreover, the FDA concluded that, even if the video was accessible, "a virtual inspection is insufficient to meet the requirements of Paragraph 8(F)" because the expert "must be able to freely inspect the BioAnue facility with full control over what he is or is not seeing."  *Id.*  In the end, the FDA determined that the remote Skype audit did not offer the expert the "firsthand sensory experience necessary to adequately and comprehensively inspect the physical conditions at the BioAnue facility."  *Id.*  This determination is reasonable.

The FDA also concluded that the expert's cGMP Audit report did not constitute the "full and complete detailed report" required by Paragraph 8(G).  *Id.* at 4.  Indeed, while the cGMP Audit report lists cGMP requirements set forth in 21 C.F.R. Part 111, as the FDA points out, the expert merely "provide[d] summary, nonspecific, and unclear 'Auditor Comments' such as 'Observed,' 'Per SOPs and GMP training,' 'See general 400+ page SOPs that were developed by the Company staff,' and 'Confirmed post audit.'"  *Id.*; *see generally* Doc. 38-9.  The expert report also contains an "Audit Evaluation" column with a list of items, "Acceptable, Not Acceptable," "Not Observed," and "N/A" next to bubbles meant to be checked off.  *See generally* Doc. 38-9.  Certainly, it is reasonable to conclude that these "Auditors Comments" and "Audit Evaluation" are an inadequate means of evaluating the Defendants' compliance with cGMP.[7]

In sum, the Court finds that the FDA's conclusion that the Defendant's expert reports failed to establish compliance with the requirements of the injunction was not

---

[7] The FDA also concluded that the Expert Certification, which is not in the record, did not "address all of the items listed in paragraph 8(G)."  Doc. 30-1 at 4.  This is yet another reasonable basis for the FDA to believe that the Defendants are not in compliance with the injunction.

arbitrary and capricious. Accordingly, because the Defendants cannot show that they have fully complied with the injunction, the Court need not address whether the Defendants are in compliance with the other requirements listed in Paragraph 8.[8]

### 3. Second Request for Relief from Order of Permanent Injunction

In their second request for relief from the injunction, the Defendants argue that Federal Rule of Civil Procedure 60(b)(5) provides a basis for granting them relief because "circumstances have drastically changed since FDA's inspection in 2012."[9]

---

[8] The FDA states in its December 19, 2014 letter that it "will inspect the BioAnue facility after the Paragraph 8(A) through (H) requirements are complete." Doc. 30-1 at 4.

[9] The Defendants also argue that Rule 60(b)(3),(6), and Rule 60(d)(1),(3) are applicable to their request for relief. Doc. 42 at 3. They are not. First, their request for relief under Rule 60(b)(3), a ground for relief for fraud by an opposing party, is unavailable because it is untimely. *See* Fed. R. Civ. P. 60(c) ("A motion under Rule 60(b) must be made within a reasonable time—and for reasons (1), (2), and (3) *no more than a year* after the entry of the judgment or order or the date of the proceeding.") (emphasis added). While the Defendants could then rely on Rule 60(d)(3), which they do, to assert that judgment should be set aside for fraud on the court, that assertion is not supported by clear and convincing evidence. *See Booker v. Dugger*, 825 F.2d 281, 285 (11th Cir. 1987) (noting the movant has the burden to show by clear and convincing evidence that there was fraud on the court). Though the Defendants claim the Government engaged in fraudulent behavior when it used quotes from an alleged phone conversation between an undercover FDA agent and Defendant Gloria Raber to show the Defendants' noncompliance with the injunction and thereafter could not produce the full transcript of the conversation when requested, this is not evidence of fraud. Doc. 42 at 9. As the Government explains, the FDA did not transcribe the telephone conversation, and the quotes used to support its opposition to the Defendants' petition for relief "were not intended in any way to serve as a 'partial transcript' (or any transcript)." Doc. 40 at 1-2. But even if the Government did intend to use the quotes as a transcript, as discussed below, the Court did not consider these quotes in ruling on the Defendants' motions for relief from the injunction. The Defendants' assertion that the "Summary Judgment granted to Plaintiff FDA in July 2014, was based upon fraudulent evidence and claims" is also not supported by clear and convincing evidence. Doc. 42 at 9.

The Defendants also cannot obtain relief under Rule 60(d)(1). Rule 60(d)(1) states that a court may "entertain an independent action to relieve a party from a judgment, order, or proceeding." To the extent the Defendants argue that the alleged fraud discussed above creates an independent action for relief, this argument fails because they cannot show that (1) there was fraud, or (2) relief is required "to prevent a grave miscarriage of justice." *Aldana v. Del Monte Fresh Produce N.A., Inc.*, 741 F.3d 1349, 1359 (11th Cir. 2014) (quotation marks and citation omitted); *see also United States v. Beggerly*, 524 U.S. 38, 47 (1998) (holding that "an independent action [to relieve a party from a judgment] should be available only to prevent a grave miscarriage of justice" and that the Government failing to thoroughly search its records and make full disclosure to the Court does "not nearly approach this demanding standard").

Finally, there is no relief under Rule 60(b)(6)'s catchall provision: "any other reason that justifies relief." Relief under this provision is only available under "sufficiently extraordinary circumstances." *See Galbert v. West Caribbean Airways*, 715 F.3d 1290, 1295 (11th Cir. 2013) (noting the movants' attempt to raise arguments that they failed to raise initially in their opposition to a motion to dismiss does not constitute "sufficiently extraordinary circumstances to warrant Rule 60(b)(6) relief"). At best, the Defendants are

Doc. 42 at 3, 8.  Specifically, they list the following "changes" to show "it is no longer possible to follow the demands of the Injunction:" (1) there is no manufacturing facility; (2) there are no employees; (3) there are no raw products; (4) there are no finished products; (5) there is no money or bank account; (6) there is no company; and (7) Defendant Gloria Raber is "financially ruined and has no finances or credit with which to construct the company she once oversaw and successfully operated." *Id.* at 8.

This argument is difficult to understand.  The injunction imposes obligations only if the Defendants want to restart their business, either through BioAnue Laboratories, Inc. or their apparently new entity, BioAnue Health Products, LLC.  And the Defendant's expert reports clearly suggest their intent to relabel their products and do just that.  If the Defendants have no plans to market products regulated by the FDA, they have nothing to be concerned about.  If, on the other hand, they want to return to the dietary supplement market, the continued need for the injunction is apparent, notwithstanding BioAnue's demise.  In any event, the record does not establish that the Defendants are "financially ruined," except, possibly, to the extent that their illegal business operations have been thwarted.  That is not a change in circumstances that warrants relief from a prohibition against further illegal activity.

No doubt, the injunction is inconvenient and bad for business.  But the Defendants' business was bad.  If the Defendants want to return to that business, they must comply with the injunction.  Again, a party may obtain relief under Rule 60(b)(5)

---

raising arguments that they should have raised initially, and in fact, for some, already did raise, when they opposed the Government's motion for summary judgment, such as "Unlawful Joining," "Violation of Free Speech," "Violation of the Dietary Supplement Health and Education Act," and "Targeted for Products that Worked."  Doc. 42 at 3-8.  Clearly, this attempt to raise these arguments does not constitute "sufficiently extraordinary circumstances" to warrant relief under Rule 60(b)(6).

when "it is no longer equitable that the judgment should have prospective application, *not when it is no longer convenient* to live with the terms of a consent decree." *Rufo*, 502 U.S. at 383 (emphasis added). Accordingly, the Defendants' first and second motion for relief from the injunction are **DENIED**.

**B.    Defendants' Other Motions**

In addition to their motions for relief from the injunction, the Defendants have filed three related motions: (1) a motion to be "disjoined" from the injunction (Doc. 36); (2) a motion to produce a full telephone transcript (Doc. 37); and (3) a motion to strike the Government's response (Doc. 41). The Court will address these motions in turn.

In their "Request to be Disjoined in the Order of Permanent Injunction," the Defendants argue that Kelly Raber was unlawfully joined to the case because he "did not work for Gloria Raber or her company, BioAnue Labs," but rather "was an independent writer, formulator, and international lecturer who had a separate website dedicated to educating his readers about nutrition." Doc. 36 at 2. They also argue that under the Georgia Married Women's Property Act of 1866, it is unlawful to join Gloria Raber's business to that of her husband because she has the legal right to own and operate a separate business without her husband's consent. *Id.*

Notwithstanding that married women have the right to own and operate separate businesses, the Defendants are merely rehashing the arguments that their counsel had raised at the hearing on the Government's motion for summary judgment. Doc. 26 at 12. In its Order granting summary judgment to the Government, the Court determined the argument that Kelly Raber was "merely a writer who enjoys expressing his thoughts about BioAnue products" was frivolous because the Defendants admitted that Kelly

Raber was responsible for formulating BioAnue products, his name was on the address from which BioAnue products were shipped, he was a trustee and co-owner with Gloria Raber of the trust that owned the trademarks under which BioAnue products were sold, he communicated with customers on behalf of BioAnue, and he recorded lengthy video lectures about the benefits of BioAnue products while BioAnue's website address was plastered across the screen.[10]  *Id.*

        Thus, as the Government points out, because the Defendants are attempting to raise an issue—whether the individual Defendants have been properly joined and included in the injunction—that has already been decided by this Court, the Defendants' request is barred by the law of the case doctrine.  Doc. 39 at 4.  "Under the law of case doctrine, a legal decision made at one stage of the litigation, unchallenged in a subsequent appeal when the opportunity existed, becomes the law of the case for future stages of the same litigation, and the parties are deemed to have waived the right to challenge that decision at a later time."  *United States v. Escobar-Urrego*, 110 F.3d 1556, 1559 (11th Cir. 1997) (quotation marks and citations omitted).  This doctrine has three exceptions, none of which applies in this case.  The Defendants do not present any evidence that was not already known to them over three years ago, do not describe any change in controlling law, and do not show that the Court's prior decision was

---

[10] In their "Second Request for Relief from Order of Permanent Injunction," the Defendants object to these factual findings regarding Kelly Raber's involvement, stating that their counsel "failed to make corrections to the record" and "failed miserably especially during oral arguments."  Doc. 42 at 9.  But rather than making these alleged corrections to the record themselves, the Defendants decided to "suck it up and follow the procedures outlined in the Injunction."  *Id.* at 2.  In fact, the Defendants waited until three years after the Court entered its order enjoining the Defendants to make the alleged corrections to the record.  *Id.*  Notwithstanding this long delay to seek correction, as discussed below, the law of the case doctrine bars the Defendants' request to be "disjoined."

clearly erroneous. *Id.* at 1561. Accordingly, the Defendants' "Request to be Disjoined in the Order of Permanent Injunction" (Doc. 36) is **DENIED**.[11]

The Defendants' remaining two motions merit little discussion. Their motion to produce a full telephone transcript and motion to strike derive from a single incident that occurred on May 30, 2017. Doc. 35-1 at 3. On that date, an undercover FDA agent contacted Defendant Gloria Raber by telephone and asked whether some of the BioAnue products were for sale. *Id.* In response, Defendant Gloria Raber allegedly stated that the FDA "filed an injunction to stop the sale of [the Defendants'] products so they aren't currently available" and that with the "new administration," the Defendants are "hoping to make the products available again." *Id.* at 3-4. The Government uses these quotes in its response brief to show why the Defendants should not be granted relief from the injunction. Doc. 35 at 7. The Defendants "object to the incomplete sentence quotes" and argue that it is "unethical and unlawful to present only a partial transcript in an argument against [them]." Doc. 37 at 1. They therefore request that the Court order the Government to produce the entire telephone transcript and strike the partial quotes and any reference to the quotes. Docs. 37 at 1; 41 at 1. However, because the Court considered neither the quotes nor the Government's responses related to the quotes in denying the Defendants' motions for relief from the injunction, it is unnecessary to rule on the motion to produce and motion to strike. Accordingly, these motions are **DENIED as moot**.

---

[11] Even construing the Defendants' request to be "disjoined" as a "Motion for Reconsideration" under Local Rule 7.6 or a "Motion to Alter or Amend a Judgment" under Federal Rule of Civil Procedure 59(e), that request would be untimely. *See* M.D. Ga. L.R. 7.6 ("[M]otions for Reconsideration shall be filed within fourteen (14) days after entry of the order."); Fed. R. Civ. P. 59(e) ("A motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment.").

## III. CONCLUSION

For the foregoing reasons, the Defendants' "Petition for Relief from Injunction" (Doc. 32), "Second Request for Relief from Order of Permanent Injunction" (Doc. 42), and "Request to be Disjoined in the Order of Permanent Injunction" (Doc. 36) are **DENIED**.  The Defendants' "Request for Production of Documents" (Doc. 37) and "Motion to Strike" (Doc. 41) are **DENIED as moot**.

**SO ORDERED**, this 30th day of March, 2018.

S/ Marc T. Treadwell
MARC T. TREADWELL, JUDGE
UNITED STATES DISTRICT COURT
